UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | : | Case No. 1:17-cv-11930 |
| *Plaintiff*, | : | |
| v. | : | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ERIC D. HARGAN, in his official capacity as Acting Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF THE TREASURY; STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF LABOR; and R. ALEXANDER ACOSTA, in his official capacity as Secretary of Labor, | : | |
| *Defendants*. | : | |

## DECLARATION OF CARYN DUTTON

I, Caryn Dutton, M.D. M.S., do hereby depose and state the following based on my personal knowledge and under pains and penalties of perjury:

1. I am an obstetrician-gynecologist based at the Brigham & Women's Hospital in Boston, Massachusetts (the "Brigham"). I have been a practicing physician for more than 21 years.

2. I earned my medical degree from the University of Connecticut School of Medicine. I earned my Masters in Science in Applied Biostatistics and Epidemiology from the University of Southern California. My bachelor's degree in Chemistry is from Amherst College.

3. I currently serve as the Medical Director of the Gynecology Practice at the Brigham (the "Brigham GYN Clinic"). I have held that role for almost 8 years. In that capacity, my responsibilities include leadership for the physician preceptors, supervision of resident clinic

1

sessions, and both development and training relevant to clinical guidelines for the practice of inpatient and ambulatory Gynecology.

4. I am also an Instructor at the Harvard Medical School, a role I have held for almost eight years. I serve as the Associate Fellowship Director for the Fellowship in Family Planning at the Brigham/Harvard Medical School.

5. Prior to this work, I was an Assistant Professor in Obstetrics and Gynecology at University of Wisconsin School of Medicine and Public Health in Madison, Wisconsin. I also served as Associate Medical Director at Planned Parenthood of Wisconsin. I completed a fellowship in Family Planning Clinical Care and Research at Los Angeles County/University of Southern California Medical Center, and was a Rabkin Fellow in Medical Education at Beth Israel Deaconess Medical Center.

6. I have been certified by the American Board of Obstetrics and Gynecology since 2003.

7. During my career, I have provided care to a diverse population of women and families, both insured and uninsured, in a variety of settings including Planned Parenthood Clinics, academic health centers, regional hospitals, and publicly-funded urban medical centers.

8. The Brigham GYN Clinic currently provides over 5500 patient visits annually, and includes a staff of nine faculty physicians and 44 resident physicians. Approximately one-third of these visits involve contraceptive counseling or prescription.

9. Some of the patients to whom the Brigham GYN Clinic provides medical services do not have health insurance, do not have coverage for the care they are seeking, or need confidential care and cannot utilize their health insurance for their visit.

10. As part of our practice at the Brigham GYN Clinic, we refer patients who cannot utilize their insurance or do not have coverage for the care they are seeking to facilities that can cover patient visits through federal and state funding, including the Massachusetts Department of Public Health's ("DPH") Sexual and Reproductive Health Program ("SRHP").

11. As part of our practice at the Brigham GYN Clinic, we assist patients who cannot utilize their insurance or do not have coverage for the care they are seeking in determining whether they are eligible for coverage under the state Medicaid program, MassHealth. If these patients are eligible for MassHealth, as either a primary or secondary insurer, we assist the patients in enrolling in MassHealth.

12. Our practice at the Brigham GYN Clinic includes caring for patients who have medical conditions that require them to take medications that could place a fetus at risk. For these patients, in particular, access to contraception and continuity of care are critical.

13. Our practice at the Brigham GYN Clinic includes caring for patients who have medical conditions that put the mother at risk if she were to have an unplanned or unintended pregnancy. For these patients, in particular, access to contraception and continuity of care are critical.

14. As a physician and clinical educator, I have long been concerned about the cost of reproductive health care, including contraception, and the impact that cost has on patient access to appropriate care as well as economic and professional opportunity for women.

15. Access to contraception is critical for women's health. Planning pregnancies can help women optimize their health prior to pregnancy and minimize pregnancy complications.

16. Pregnancy planning is particularly important for the growing population of young women with chronic conditions such as diabetes, hypertension and obesity. Data demonstrate

that as the population of pregnant and reproductive-age women with chronic conditions grows, severe pregnancy-related morbidity is rising, and U.S. rates of maternal deaths remain among the highest in the industrialized world. Contraception is one critical tool in addressing this trend.

17. Unintended pregnancies also put babies at risk. Effective contraception is essential for the 11.7 million American women annually who need to take medications that would be harmful for a fetus.

18. In an unintended pregnancy, a mother is more likely to experience symptoms of postpartum depression. Unplanned pregnancies also create a higher risk of preterm birth and delivery of a low-birth weight infant.

19. Contraception is also crucial for women's well-being and contributions to society and the economy. Unintended pregnancy is a serious economic burden, while broad access to contraception has a profound impact on women's attainment of higher education, greater employment and earning power, a narrowing of the gender pay gap.

20. Historically, cost has been a significant barrier to access to effective contraceptive use in the United States. Some commonly used contraceptives, such as the oral contraceptive pill, are relatively inexpensive but must be purchased on a regular basis, and have a higher failure rate.

21. The most effective reversible contraceptive methods are long-acting reversible contraceptive (LARC) methods, such as intrauterine devices (IUDs) and the contraceptive implant. These methods require a one-time purchase and offer months or years of contraceptive coverage. A high upfront cost has been shown to prevent patients from choosing LARC methods.

22. Studies have shown that when contraceptive costs are covered, patients are better able to choose the best form of contraception for them, and that they often prefer LARCs over

other contraceptive methods. As a result, rates of LARC utilization have increased and unintended pregnancies have declined.

23. The Patient Protection and Affordable Care Act (ACA) had had some promising effects on increasing contraceptive access by requiring insurance coverage without copays or deductibles.

24. I am familiar with the Interim Final Rules (IFRs) issued by the Defendants in this case on October 6, 2017, regarding expansion of the exemptions to the contraceptive mandate under the ACA.

25. I also understand that the IFRs are currently subject to nationwide injunctions that have stopped their implementation at this time.

26. It is my understanding that approximately 60% of Massachusetts' insured are covered through an employer-sponsored health plan, either directly or as a dependent. Many of these individuals have their coverage through self-funded plans, and therefore are not protected by Massachusetts state laws mandating contraceptive coverage.

27. If the IFRs are permitted to go into effect, I anticipate that some women in Massachusetts will lose coverage for contraceptive services as a result of their employer's exercise of one of the IFRs' exemptions.

28. When any of those women visit the Brigham GYN Clinic for contraceptive services, we will help them find alternative means to cover the cost of their care, including by: (i) determining if they are eligible for MassHealth coverage (as a secondary payer) so they can continue their care with us; or (ii) determining if they may qualify for coverage through DPH's SRHP funding and can see a provider at a facility that receives such funding.

29. The women and families impacted by these IFRs will come from a wide range of social and economic backgrounds.

30. The IFRs will also impact health outcomes for women, including for those women who are eligible for alternative forms of coverage, such as MassHealth and DPH's SRHP. Even minor obstacles to contraceptive care, including additional doctor's visits, finding a new provider, and cost can deter utilization of contraception, which can in turn increase the risk of unintended pregnancies.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON January _18__, 2018.

*[signature: C Dutton MD]*

_____
Dr. Caryn Dutton