United States District Court
District of Massachusetts

```
_____
                                  )
Commonwealth of Massachusetts,    )
                                  )
          Plaintiff,              )
                                  )
          v.                      )   Civil Action No.
                                  )   17-11930-NMG
United States Department of       )
Health and Human Services; Eric   )
D. Hargan, in his official        )
capacity as Acting Secretary of   )
Health and Human Services;        )
United States Department of the   )
Treasury; Steven T. Mnuchin, in   )
his official capacity as          )
Secretary of the Treasury;        )
United States Department of       )
Labor; and R. Alexander Acosta,   )
in his official capacity as       )
Secretary of Labor,               )
                                  )
          Defendants.             )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

    This case involves a dispute about the validity of two
Interim Final Rules ("IFRs") issued by the United States
Department of Health and Human Services, the United States
Department of the Treasury and the United Stated Department of
Labor (collectively "defendants" or "the departments") on
October 6, 2017.  The Commonwealth of Massachusetts ("plaintiff"
or "the Commonwealth") alleges that the departments' issuance of

the IFRs violates the Administrative Procedure Act ("APA") and the United States Constitution.  The IFRs expand the religious exemption to the Affordable Care Act's ("ACA") contraceptive mandate and create a new moral exemption to that mandate.

Dordt College, a "Christ-centered institution of higher learning located in Sioux Center, Iowa," and March for Life Education and Defense Fund ("March for Life"), a "pro-life, non-sectarian advocacy organization" located in Washington, D.C., are employers that wish to avail themselves of, respectively, the expanded religious exemption and the moral exemption.  Both employers seek to avoid having to provide certain hormonal drugs and devices, perceived to be abortifacients, which are required by the contraceptive mandate.

Pending before the Court is the motion to intervene of Dordt College and March for Life (collectively "putative intervenors").  Because the putative intervenors have failed to establish that their interests will not be adequately represented by the named defendants, that motion will be denied.

I.   **Background**

   **A. Dordt College and March for Life**

Dordt College is a Reformed Christian institution of higher education located in Sioux Center, Iowa.  The College is a non-denominational agency of the Christian Reformed Church of North

America (CRCNA).  An incorporated society composed primarily of the CRCNA owns and controls the College.  The College "unreservedly shares the Christian Reformed Church's religious views regarding abortion."  That includes the belief that the

> procurement of, participation in, facilitation of, or payment for abortion (including abortion-causing drugs and devices like Plan B and ella) violate the Sixth Commandment and is inconsistent with the dignity conferred by God on creatures made in His image.

The College also fulfills its religious commitments by providing health insurance to employees and their dependents and to students through a student health plan.  The employee health plan offers various FDA-approved contraceptive methods but "excludes ella and Plan B, which can and sometimes do act as abortifacients."

March for Life is a nonprofit advocacy group that exists "to oppose the destruction of human life at any stage before birth, including by abortifacient methods."  The organization, "[based] on scientific fact and medical knowledge . . . holds as a basic tenet that human life begins at conception." Accordingly, March for Life is morally opposed to providing coverage for abortions or abortifacients in its health insurance plan.  The organization opposes coverage of certain hormonal drugs and devices included in the ACA's contraceptive mandate that "may prevent or dislodge an implanted human embryo after fertilization, thereby causing its death."

-3-

**B.  The contraceptive mandate**

The ACA generally requires that employer-sponsored healthcare plans include a range of preventive care services on a no-cost basis ("the preventive services requirement").  See 42 U.S.C. §§ 18022 & 300gg-13.  That requirement mandates no-cost coverage

> with respect to women, . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration ["HRSA"].

S. Amdt. 2791, 111th Congress (2009-2010).

Thus, instead of including specific preventive care services, Congress delegated authority to HRSA, an agency within HHS.  HRSA and HHS enlisted the Institute of Medicine ("IOM"), which convened a committee to assess what preventive services should be included.  The IOM recommended that the services include

> the full range of Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity.

IOM Report at 104.

Accordingly, when the HRSA promulgated its Women's Preventive Services Guidelines in August 2011, non-exempt employers became required to provide "coverage, without cost sharing," for "[a]ll Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient

education and counseling" ("the contraceptive mandate").  Those
guidelines went into effect in August, 2012.  The HRSA updated
the Women's Preventive Services Guidelines in December 2016,
reaffirming that the Guidelines should continue to require full
coverage for contraceptive care and services.

## C. Accommodations for religious objections to the contraceptive mandate

In 2011, the relevant federal Departments issued
regulations automatically exempting churches and their
integrated auxiliaries, conventions and associations of churches
and the exclusively religious activities of religious orders
from the contraceptive care requirement.

In 2013, the Departments issued regulations providing an
accommodation for objecting religious non-profit organizations.
The accommodation created a system whereby insurers and third
parties paid the full cost of contraceptive care and employees
received seamless coverage ("the accommodation process").  That
process was expanded to cover closely held, for-profit companies
in response to Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct.
2751 (2014), in which the Supreme Court held that the
contraceptive mandate violated the Religious Freedom Restoration
Act ("RFRA") for certain closely-held, for-profit employers.
The Court held that the "HHS contraceptive mandate substantially
burden[ed] the exercise of religion." Id. at 2775 (internal

quotation omitted) (citing 42 U.S.C. § 2000bb-1(a)).  The
accommodation process, the Court explained, was a "less
restrictive means" of furthering the government interest and
thus RFRA required that the accommodation be expanded to include
certain closely held corporations. Id. at 2780.

In a separate series of cases, religious organizations such
as universities and healthcare providers that did not perform
"exclusively religious activities" challenged the legality of
the accommodation process itself.  See Zubik v. Burwell, 136 S.
Ct. 1557 (2016).  In May, 2016, those cases were remanded to
their respective circuit courts for further consideration of
whether the accommodation process could be altered to address
the religious employers' concerns while still providing seamless
contraceptive coverage.  In January, 2017, after reviewing more
than 50,000 comments, the Departments announced that the answer
was "No".  No alternative, the Departments explained, would pose
a lesser burden on religious exercise while ensuring
contraceptive coverage.

**D.  The Interim Final Rules**

On May 4, 2017, the President issued an "Executive Order
Promoting Free Speech and Religious Liberty." Exec. Order No.
13,798, 92 Fed. Reg. 21,674 (May 4, 2017).  That order
instructed agencies

[to] consider issuing amended regulations, consistent with
applicable law, to address conscience-based objections to
the preventive-care mandate promulgated under section
300gg-13(a)(4).

Id.

The Departments of the Treasury, Labor and HHS issued the

two Interim Final Rules ("IFRs") at issue in this case on

October 6, 2017. See 82 Fed. Reg. 47,799 ("Religious Exemption

Rule"); 82 Fed. Reg. 47,838 ("Moral Exemption Rule").

First, the IFRs create an expanded religious exemption.

The HRSA exempts objecting entities "from any guidelines'

requirements that relate to the provision of contraceptive

services." 45 C.F.R. § 147.132(a).  The Religious Exemption Rule

expands objecting entities to include any non-governmental plan

sponsor that objects to

establishing, maintaining, providing, offering, or
arranging (as applicable) coverage, payments, or a plan
that provides coverage or payments for some or all
contraceptive services, based on its sincerely held
religious beliefs.

45 C.F.R. § 147.132(a)(2).

The religious exemption also applies to institutions of

higher education in their arrangement of student health

insurance coverage to the extent of that institution's sincerely

held religious beliefs. 45 C.F.R. § 147.132(a)(ii).  It exempts

all employers with a religious objection, as opposed to the

prior exemption covering churches, associations of churches and

the exclusively religious activities of religious orders.  It
also affects religious non-profit organizations: objecting
organizations formerly subject to the accommodation process may
now seek the exemption.

Under the preceding administration, no moral exemption
to the contraceptive mandate existed in any form.  The Moral
Exemption Rule provides an exemption for nonprofit organizations
and for-profit entities with no publicly traded ownership
interests that object to

> establishing, maintaining, providing, offering, or
> arranging (as applicable) coverage or payments for some or
> all contraceptive services, or for a plan, issuer, or third
> party administrator that provides or arranges such coverage
> or payments, based on its sincerely held moral convictions.

45 C.F.R. § 147.133(a)(2).

### E. Previous litigation by Dordt College and March for Life

In October, 2013, Dordt College brought a civil action
against the federal government, alleging that the contraceptive
mandate violated the Religious Freedom Restoration Act (RFRA),
the APA and the United States Constitution. The district court
enjoined the defendant departments from enforcing the
contraceptive mandate and its implementing regulations against
Dordt College pending the resolution of the underlying claims.
The court found that Dordt was sufficiently likely to succeed on
the merits of its claims because the Court of Appeals for the
Eighth Circuit had "twice granted injunctions pending appeal to

-8-

similarly situated plaintiffs challenging the Mandate under RFRA." See Dordt Coll. v. Sebelius, 22 F. Supp. 3d 934, 937 (N.D. Iowa 2014), aff'd sub nom. Dordt Coll. v. Burwell, 801 F.3d 946 (8th Cir. 2015), cert. granted, judgment vacated, 136 S. Ct. 2006 (2016) (citing O'Brien v. U.S. Dep't of Health & Human Servs., No. 12-3357 (8th Cir. Nov. 28, 2012)); Annex Med., Inc. v. Sebelius, No. 13-1118, 2013 WL 1276025, at *3 (8th Cir. Feb. 1, 2013)).  The United States Supreme Court ultimately vacated the judgment affirming the preliminary injunction but did not vacate the injunction, which is still in effect.

In July, 2014, March for Life brought a civil action against the federal government, alleging that the contraceptive mandate violated the APA, RFRA, the free exercise clause of the First Amendment and the Fifth Amendment's equal protection guarantee.  The district court allowed, in part, March for Life's motion for summary judgment, finding that the contraceptive mandate violated the equal protection guarantee of the Fifth Amendment, RFRA and the APA. See March for Life v. Burwell, 128 F. Supp. 3d 116, 134 (D.D.C. 2015). Accordingly, the district court enjoined the defendant departments from enforcing the contraceptive mandate against March for Life. Id. The federal government appealed that decision and the appeal is currently held in abeyance pending resolution of Priests for Life v. HHS (D.C. Cir. Nos. 13-5368, 13-5371, 14-5021).

-9-

The putative intervenors seek to intervene as defendants in this case because, if the Commonwealth is granted the permanent nationwide injunctive relief that it seeks, they will be forced to choose between

> violating their moral convictions by providing health care coverage which provides abortifacients, or risking crippling fines leading to their organizations' possible extinction.

## II. Motion to intervene

### A. Intervention as of right

Federal Rule of Civil Procedure 24(a) governs intervention as of right.  That rule provides that

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

The putative intervenors do not argue that a federal statute grants them an unconditional right to intervene. Instead, they rely on Rule 24(a)(2).

To succeed under Fed. R. Civ. P. 24(a)(2), a party seeking intervention as of right must establish (1) the timeliness of its motion to intervene, (2) the existence of an interest relating to the transaction that forms the basis of the pending action, (3) a realistic threat that the disposition of the

action will impede its ability to protect that interest and (4) the lack of adequate representation of its position by any existing party. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009).  A putative intervenor must "fulfill all four of these preconditions." Pub. Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). "The failure to satisfy any one of them dooms intervention." Id. (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989)). The fact-intensive nature of the inquiry "limits the utility of comparisons between and among published opinions." Id.

Because the putative intervenors fail to demonstrate the lack of adequate representation of its position by the defendants, their motion to intervene will, with respect to intervention as of right, be denied.

Typically, a party seeking to intervene needs only to make "a minimal showing that the representation afforded by a named party would prove inadequate." B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006).  In this case, however, two relevant exceptions to that general rule apply.  First, where the putative intervenor's "ultimate objective matches that of the named party," a rebuttable presumption of adequate representation applies. Id.  Second, where the representative party is a government entity, "the

-11-

burden of persuasion is ratcheted upward." <u>Patch</u>, 136 F.3d at 207.

The putative intervenors share the same "ultimate objectives" as the federal defendants.  Both groups agree that the IFRs were a procedurally and substantively lawful exercise of the departments' authority.  Naturally, they seek the same remedy: unconditional denial of the nationwide injunctive relief sought by the Commonwealth of Massachusetts.

In cases where the putative intervenor's ultimate objectives align with those of the representative party, an intervenor may attempt to rebut the adequate representation presumption by a showing of "adversity of interest, collusion or nonfeasance" or similar grounds. <u>See</u> <u>B. Fernández</u>, 440 F.3d at 546 (1st Cir. 2006) (explaining that "this trilogy of grounds for rebutting the adequate representation presumption is only illustrative").  Dordt College and March for Life concede that they share a similar ultimate goal with the federal government but stress that their interests are "distinct, direct and substantial and [] different in both kind and degree" from the interests of the federal defendants.  Such a difference does not constitute "adversity of interest, collusion or nonfeasance", even keeping in mind that those conditions are merely illustrative.  It is true that Dordt College and March for Life engaged in a protracted legal battle against these very

defendants primarily to obtain the legal protections that are contained in the IFRs.  In the case before the Court, however, the interests of putative intervenors and federal government align. Cf. Maine v. Dir., U.S. Fish & Wildlife Serv., 262 F.3d 13, 20 (1st Cir. 2001) ("An earlier adverse relationship with the government does not automatically make for a present adverse relationship.").

Putative intervenors have failed to establish the lack of adequate representation of its position by any existing party. Accordingly, their motion to intervene will, with respect to intervention as of right, be denied.

**B. Permissive intervention**

Permissive intervention is governed by Fed. R. Civ. P. 24(b).  That rule provides that

> [o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b).

The rule further provides that, in its exercise of discretion, a court

> must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(3).

-13-

Putative intervenors do not claim that they have a conditional right provided by statute. Accordingly, they rely on Rule 24(b)(2).

Among other factors, the Court should consider whether the "putative intervenor's interest is adequately represented by an existing party." KG Urban Enterprises, LLC v. Patrick, 293 F.R.D. 42, 49 (D. Mass. 2013) (citing Massachusetts Food Ass'n v. Sullivan, 184 F.R.D. 217, 224 (D. Mass. 1999) aff'd sub nom. Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n, 197 F.3d 560 (1st Cir. 1999)). Apart from those considerations, a district court may consider "almost any factor rationally relevant" to the motion for permissive intervention and enjoys "very broad discretion in granting or denying the motion." Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).

For the reasons given above, the putative intervenors have not established that they will be inadequately represented by the federal defendants.

Just as importantly, although the helpfulness of applicants in "fully developing the case" is to be considered, see id., the putative intervenors have not demonstrated that they would do so here. The Commonwealth has not requested discovery in this case. Indeed, in its motion for summary judgment, it has requested that the Court waive Local Rule 56.1, which requires a

-14-

summary judgment movant to submit a statement of undisputed
facts in support of its motion.  Nor is this case likely to
involve protracted motion practice between the parties.  Cross-
motions for summary judgment are currently pending before the
Court.  Although intervention would not unduly delay or
prejudice the original parties' rights, it is unclear what the
putative intervenors would add that they cannot add as <u>amici</u>
<u>curiae</u>.  The Commonwealth has suggested that it "would not
oppose a motion for leave to file such a brief".

     This Court is confident that the federal defendants will
adequately represent the interests of Dordt College and March
for Life in acting in accordance with their

>     religious or moral conviction that all unborn children have
>     inestimable worth and dignity and therefore should never be
>     aborted.

<u>Cf.</u> <u>Tutein</u> v. <u>Daley</u>, 43 F. Supp. 2d 113, 131 (D. Mass. 1999)
("[W]here, as here, intervention as of right is decided based on
the government's adequate representation, the case for
permissive intervention diminishes . . . .") (internal citations
omitted).

     The putative intervenors note that, although their
interests align with the federal defendants in this case, they
have spent years litigating the subject issues <u>against</u> these
same defendants.  Accordingly, they warn, "a new administration
could be in place before [this litigation] is resolved."  The
Court acknowledges this concern and notes that, should the
relationship between putative intervenors and the named

-15-

defendants change while this litigation is ongoing (<u>i.e.</u> if 2020 is upon us), a renewed request to intervene may be appropriate. "Should later developments substantially alter the landscape," putative intervenors may renew their motion. <u>See Int'l Bhd. of Teamsters</u> v. <u>J.F. Partyka & Son, Inc.</u>, 176 F.R.D. 429, 433 (D. Mass. 1997).  Accordingly, the motion for permissive intervention will be denied as well but it will be denied without prejudice.

<b>ORDER</b>

For the foregoing reasons, the motion to intervene of Dordt College and March for Life Education and Defense Fund (Docket No. 40) is **DENIED WITHOUT PREJUDICE.**

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated January 29, 2018